UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY FARKAS, | ) |
| | ) |
| Plaintiff, | ) No. 4:17-CV-761 RLW |
| | ) |
| v. | ) |
| | ) |
| ADDITION MANUFACTURING | ) |
| TECHNOLOGIES, LLC f/k/a | ) |
| MCKEE-ADDISON TUBE FORMING, INC., | ) |
| AM INDUSTRIAL GROUP, LLC, and | ) |
| OVERTON INDUSTRIES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(B) Expert Disclosure and Motion to Exclude Plaintiff's Rule 26(a)(2)(B) Expert (ECF No. 53), Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(C) Expert Disclosures and Motion to Exclude Plaintiff's Rule 26(a)(2)(C) Experts (ECF No. 57), Defendant Overton Industries, Inc.'s Motion for Summary Judgment (ECF No. 63), Defendant Addition Manufacturing Technologies, LLC's Motion to Exclude Plaintiff's Rule 26(a)(2)(B) Expert Dr. J. Kenneth Blundell (ECF No. 85), Defendant Addition Manufacturing Technologies, LLC's Motion for Summary Judgment (ECF No. 87). These matters are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Timothy Farkas ("Farkas") alleges that he suffered an injury on April 24, 2015 to his left hand while operating a McKee Addison FM-70 ID-OD RS tube forming machine ("the

Machine") as part of his employment with Bohn & Dawson, a metal tube fabricating company in St. Louis, Missouri. The Machine was designed and manufactured by Defendant Addition Manufacturing Technologies, LLC ("Addition") sometime in 1992.

After a couple changes in ownership, AM Industrial Group, LLC ("AM Industrial") purchased the Machine from Pearl Equipment on August 18, 2010, and then sold the Machine to Bohn & Dawson on May 28, 2013.[1] In September 2014, Defendant Overton Industries, Inc. ("Overton") manufactured clamp blocks for Bohn & Dawson under part number B16-F2155-00. The clamp blocks were designed to be interchangeable with other tube end forming machines and were not designed specifically for use in the Machine at issue.

Using the Machine, an operator places a metal tube into the Machine and presses a button to activate the Machine. Then, a set of clamp blocks tighten around the tube and hold it in place while a hydraulic ram forms the end of the tube to the specifications Bohn & Dawson needed.

On April 24, 2015, Farkas was injured when his hand was crushed by the Machine's clamps. Farkas suffered injuries to his pointer finger and middle finger on his left hand. Farkas asserts claims for strict liability and negligence on theories of design defect and failure to warn against all defendants.

---

[1] Farkas filed a Notice of Settlement in Principle as to AM Industrial Group, LLC (ECF No. 109) and the Court granted the dismissal of AM Industrial Group LLC on November 26, 2018 (ECF No. 112). The Court, therefore, does not address AM Industrial Group's Motions.

# DISCUSSION

## I. MOTIONS TO STRIKE/DAUBERT

### A. Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(B) Expert Disclosure and Motion to Exclude Plaintiff's Rule 26(a)(2)(B) Expert (ECF No. 53) and Defendant Overton Industries, Inc.'s Joinder in Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(B) Expert and Memorandum in Support (ECF No. 61)

Farkas's expert, Dr. Blundell, provided a January 30, 2018 report that contained four conclusions. Addition[2] noticed Dr. Blundell's deposition for March 6, 2018. Moments before the deposition of Dr. Blundell, defendants were provided Dr. Blundell's "new" opinions and conclusions, which superseded his conclusions in his January 30, 2018 report. Addition asks this Court to strike Farkas' expert witness, Dr. Blundell, because:

- Dr. Blundell's January 30, 2018 preliminary report was incomplete and did not include all of Dr. Blundell's opinions as required under Rule 26(a)(2)(B);

- Dr. Blundell's January 30, 2018 preliminary report was prepared without review of sufficient facts or data as required under Federal Rule of Evidence 702(b);

- Dr. Blundell's opinions changed from his January 30, 2018 report to the date of his March 6, 2018 deposition; and

- Dr. Blundell's new opinions were not timely disclosed to Defendants.

Addition asks for the Court to strike the opinions and testimony of Dr. Blundell and to award it reasonable attorney's fees associated with Dr. Blundell's deposition pursuant to Rule 37(c)(1)(A).

---

[2] The Court does not separately address Overton Industries' Joinder in Addition's Motion to Strike, but this Court's ruling applies equally to both motions.

In response, Farkas argues that Dr. Blundell supplemented his opinion only because Addition produced a "key document" more than a month late, and 21 days after Dr. Blundell was required to issue his report. (ECF No. 59). The "key document" was a safety notice Addition issued 16 years ago, admitting the Machine was defective because it allowed operators to place their hands between the clamping jaws of the Machine while accessing the footswitch. *See* ECF No. 59-1. Farkas claims Dr. Blundell formed his supplemental conclusions on March 6, 2018 because Addition failed to timely respond to discovery requests and belatedly produced the safety notice.

The Court denies the Motion to Strike Dr. Blundell as a witness. The Court holds Farkas has provided a valid explanation for Dr. Blundell's amended expert report, which was timely supplemented under the circumstances. In addition, the Court determines Dr. Blundell's arguably belated supplemental report will not significantly prejudice Addition or disrupt the trial schedule in this case, given the lengthy time period from when the report was issued to the trial date. Therefore, the Court denies Addition's Motion to Strike.

**B. Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(C) Expert Disclosures and Motion to Exclude Plaintiff's Rule 26(a)(2)(C) Experts (ECF No. 57)**

Addition asks this Court to strike Farkas' Rule 26(a)(2)(C) expert witnesses of Dr. Christopher J. Dy, Dr. David Seltzer, Dr. David M. Brown and Paramedic Kevin Carman. In Farkas' Rule 26 expert disclosures, Farkas stated that his experts "may provide testimony as to the cause ... of Plaintiff's injuries and disabilities..." Farkas' counsel later clarified that none of his Rule 26(a)(2)(C) experts would testify regarding causation. However, Dr. Dy testified as to causation at his deposition. As a result, Addition seeks an order excluding Dr. Christopher J. Dy,

Dr. David Seltzer, Dr. David M. Brown and Paramedic Kevin Carman from testifying as to causation pursuant to Rule 37(c)(1) and the Court's requirements. *See also* ECF No. 69.

Farkas argues that the "sudden onset doctrine" allows his treating physicians to opine where there is "no question about the cause of the injury." (ECF No. 62 at 1). Farkas claims his treating physicians should be permitted to testify regarding causation determinations reached during his care and treatment. (ECF No. 62 at 2).

Under the sudden onset doctrine, a causal connection may be inferred if the injury "develops coincidentally with the negligent act," such as broken bones, immediate, continuing back pain, or an obvious wound. *DeMoulin v. Kissir,* 446 S.W.2d 162, 165 (Mo.Ct.App.1969); *Lidge v. Sears, Roebuck & Co.*, 318 F. Supp. 2d 830, 836 (W.D. Mo. 2004). The testimony of a lay witness is sufficient to establish the nature, cause and extent of an injury "when the facts fall within the realm of lay understanding." *Williams v. Jacobs,* 972 S.W.2d at 340; *Griggs v. A.B. Chance Company,* 503 S.W.2d 697, 704 (Mo. Ct. App. 1973). However, when the injury is a "sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding." *Williams,* 972 S.W.2d at 340; *quoting Griggs v. A.B. Chance Co.,* 503 S.W.2d at 704; *see also Super v. White,* 18 S.W.3d 511, 516 (Mo. Ct. App. 2000); *Soper v. Bopp,* 990 S.W.2d 147, 157 (Mo. Ct. App. 1999). "Evidence of medical expenses and subjective complaints of pain will not suffice in proving the existence or nature of an alleged injury which is not readily discernable." *Lidge*, 318 F. Supp. 2d at 836 (citing *Pihsiou Hsu v. Mound City Yellow Cab Co.,* 624 S.W.2d 61, 63 (Mo. Ct. App. 1981)).

The Court holds testimony regarding the serious and immediate damage to Farkas' fingers and hand are covered under the "sudden onset doctrine." Therefore, Farkas does not need to provide a report for Dr. Dy and similar treating physicians to testify as to the amputation and treatment of his hand and finger injury, and Farkas will not be required to provide an expert report as to causation. In contrast, any other ailments for which the source of injury is not obvious and not confined to Farkas' left fingers and hand do not fall within the sudden onset doctrine. Therefore, the Court requires any physician testimony regarding causation of such injuries to be accompanied by an expert report under Fed. R. Civ. P. 26(a)(2)(B). For example, any testimony regarding the cause of Farkas' left shoulder injury would need an expert opinion and report.

### C. Motion to Exclude Dr. J. Kenneth Blundell by Addition Manufacturing Technologies, LLC (ECF No. 85)

#### 1. Standard of Review

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the

expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id.* A court is entitled to substantial discretion in determining whether expert testimony should be allowed. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Russell*, 702 F.3d at 456-57 (quotation omitted). "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted); *see also Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation omitted).

### 2. Discussion

Addition does not challenge Dr. Blundell's qualifications but claims that his opinions were based on incomplete information. Addition contends that Dr. Blundell did not know what point of operation guard or what components were on the Machine when it was manufactured in 1992. Therefore, Addition claims that Dr. Blundell does not have a reliable foundation to form any opinions regarding liability.

The Court denies Addition's Daubert motion as to Dr. Blundell. At this stage of the litigation, the Court holds Dr. Blundell's opinions are sufficiently supported, based upon his experience, expertise and examinations. Dr. Blundell reviewed design documents and data to

come to his conclusions.[3] The Court concludes that Dr. Blundell's testimony is not so unreliable that it would offer no assistance to the jury. *See Synergetics*, 477 F.3d at 956. Moreover, Addition can challenge any of Dr. Blundell's findings with its own expert testimony. Therefore, the Court denies Addition's *Daubert* motion as to Dr. Blundell.

## II. Motions for Summary Judgment

### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

---

[3] Dr. Blundell argues that Addition should have employed a light curtain or two-hand control instead of the guard that was in place. Because Addition does not dispute that the Machine was never equipped with a light curtain or two-hand control, Addition's argument that Dr. Blundell did not know the point of operation guard on the Machine in 1992 is irrelevant.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Claims against Overton and Addition

Farkas alleges claims for Strict Product Liability in Count I and for Negligence in Count II against Addition. Farkas also alleges claims for Strict Product Liability in Count V and for Negligence in Count VI against Overton. The elements of these claims in Missouri are well-settled:

> "Under Missouri law, to prevail in a products liability action under a theory of defective design, an injured plaintiff must establish that 1) defendant sold the product in the course of its business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was injured as a direct result of such defective condition as existed when the product was sold."

*Pillow v. General Motors Corp.* 184 F.R.D. 304 (E.D. Mo., 1998) (quoting *Jaurequi v. John Deere Co.*, 971 F.Supp. 416, 422 (E.D.Mo.1997)); *Waggoner by Waggoner v. Mercedes Benz of North Am., Inc.*, 879 S.W.2d 692, 694 (Mo. Ct. App. 1994); *see also Stanger v. Smith & Nephew, Inc.*, 401 F. Supp. 2d 974, 978–79 (E.D. Mo. 2005); *Boyer v. Bandag, Inc.* 943 S.W.2d 760, 763 (Mo. App. E.D.1997); *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150, 1152 (8th Cir. 1990) ("In 1969, the Missouri Supreme Court adopted section 402A of the Restatement (Second) of Torts, which imposes strict liability in tort upon sellers and manufacturers for selling 'any product in a

defective condition [un]reasonably dangerous to the user or consumer' that results in injury to the user or consumer.").

Likewise, to establish a claim for negligence, Farkas must prove that defendants had a duty to protect him from injury, defendants failed to perform that duty, and defendants' failure proximately caused injury to Farkas. *Ford v. GACS, Inc.*, 265 F.3d 670, 681 (8th Cir. 2001) (citing *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 155 (Mo. 2000)). "Whether a duty exists is purely a question of law." *Id.*

### C. Overton Industries' Motion for Summary Judgment (ECF No. 63)

As stated, Overton provided the clamp blocks for the Machine. Seven months after Bohn & Dawson purchased the subject clamp blocks, Farkas was injured when he stuck his left hand inside of the Machine and between the clamp blocks and then activated the machine. Overton argues the Court should grant summary judgment in its favor because the clamp blocks were not defective and Farkas has not alleged that the clamp blocks were defective. In addition, Overton claims there is no evidence to support Farkas' claim that Overton modified, rebuilt, or placed the Machine into the stream of commerce. Rather, Overton only manufactured an interchangeable component part (the clamp blocks), put the clamp blocks into the Machine, and performed a trial run requested by Bohn & Dawson to make sure the clamp blocks worked correctly. Overton notes the clamp blocks were then sent independently of the machine directly to Bohn & Dawson. Overton states it did not install the clamp blocks into the Machine at Bohn & Dawson, nor did Overton perform any safety testing or inspection of the Machine as part of its duties. As a result, Overton maintains it cannot be liable to Farkas because it owed no duty to ensure the safety of the Machine and had no duty to make the Machine safe.

Farkas argues Overton owed him a duty to ensure the Machine was safe based upon Overton's work on the Machine. Farkas claims "[w]hen [Overton] violated its own practices and ANSI [American National Standards Institute] standards it breached its duty to protect Mr. Farkas from harm within the scope of its modification of the machine." (ECF No. 72 at 2). Farkas contends "Overton should have assessed and made the product safe, or warned of the danger." (*Id.*) Farkas further asserts Overton is liable because Overton transferred the defective Machine into the stream of commerce. That is, Overton had the machine in its possession before Bohn & Dawson did and Overton showed Bohn & Dawson how to use it.

The Eighth Circuit has directly addressed product liability of a manufacturer of a component part, such as Overton:

> Under Missouri law, a plaintiff seeking to recover in strict liability for defective design must prove that (1) the product was defective and unreasonably dangerous when put to a reasonably anticipated use and (2) the plaintiff suffered damage as a direct result of the defect. *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150, 1152–53 (8th Cir.1990); *Lewis v. Envirotech*, 674 S.W.2d 105, 110 (Mo.Ct.App.1984). A supplier is not liable unless the product is defective at the time it leaves the supplier's control and enters the stream of commerce. *Lewis*, 674 S.W.2d at 110. To recover under a cause of action for negligent design, a plaintiff must prove that the defendant breached its duty of care in designing the product and that this breach was the proximate cause of the plaintiff's injury. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 608 (Mo.1977) (en banc).
>
> \*\*\*
>
> [U]nder Missouri law suppliers of nondefective component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component part supplier did not design or build.

*Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 597–98 (8th Cir. 1993). Farkas attempts to distinguish the instant case from *Sperry*, asserting that in *Sperry* the defendant did not know of the product's intended use and had no participation in the design and assembly of completed product. (ECF No. 72 at 12 (citing *Sperry v. Bauermeister, Inc.*, 786 F. Supp. 1512, 1514 (E.D. Mo. 1992)).

Farkas argues that, in this case, Overton "actually integrated the parts into the subject machine itself." (ECF No. 72 at 12). Moreover, Farkas claims the holding in *Sperry* does not preclude liability against Overton for work it performed on the Machine itself. (ECF No. 72 at 12). Farkas argues that "Overton had a legal duty to make the machine safe long before Mr. Farkas encountered it." (ECF No. 72 at 12).

However, the undisputed evidence before this Court mandates entry of summary judgment in favor of Overton. Here, Overton manufactured the clamp blocks to Bohn & Dawson's specifications. Bohn & Dawson picked up the Machine from Am Industrial and took the Machine back to its facility in St. Louis, Missouri. Overton sent the clamp blocks directly to Bohn & Dawson via next day air. *See* ECF No. 79 at 6; ECF No. 74-6. The clamp blocks used in the Machine at the time of Farkas' injury were manufactured and sold to Bohn & Dawson over a year after Overton ran the initial test run with the Machine at its facility with different set of clamp blocks. (ECF No. 79 at 7). Prior to receiving the subject clamp blocks, the Machine had been used to create many different parts with different clamp blocks. (*Id.*) With every new part and new set of clamp blocks, Bohn & Dawson evaluated and changed the guarding on the machine to make it safe for its employees. (ECF No. 79 at 6-7). Thus, the Court holds Overton merely created an interchangeable part for the Machine. The clamp blocks were not "integrated" with the Machine until they were installed by Bohn & Dawson at its facility, independent of any oversight or input by Overton regarding safety. Thus, the Court holds that, under *Sperry*, Overton cannot be liable for negligence or strict liability as a supplier of a non-defective component part.

In addition, Farkas failed to show that Overton owed him any duty of care. Farkas attempts to impose a duty of care on Overton by citing to its CEO, who agreed to the general

proposition that a product manufacturer should not make a clearly dangerous product and "if a product manufacturer knows of a safety problem on a product it is work on it should try to fix the problem." (ECF No. 72 at 6). Overton's CEO's sentiments, however, are not sufficient to impose a duty of care on Overton where one does not exist independently at law. *See Fancher v. Sw. Missouri Truck Ctr., Inc.*, 618 S.W.2d 271, 274 (Mo. Ct. App. 1981) (internal citations omitted)("The standard of care exacted by the law is an external and objective one and the law does not permit the defendant to make the determination of what is and what is not due care under the circumstances. And, custom or standard procedure, relied upon by defendant, while relevant and admissible, does not establish the legal standard of care."). Similarly, Farkas attempts to cite to industry (American National Standards Institute) standards to impose a duty on Overland. (ECF No. 72 at 8-10). Farkas, however, is unable to cite to a specific, applicable standard. *See* ECF No. 72 at 8 (noting that Addition's expert testified that "there is no specific B11 standard that applies to the subject machine; it falls into a gray area between two or three standards."). Farkas tries to make Overton fall into the definition of a "supplier," or the "manufacturer, integrator, modifier, rebuilder or installer of the machine," and impose the corresponding duty of care. (ECF No. 72 at 8-9). However, Overton performed none of those actions and cannot be held liable to that standard when it was simply the manufacturer of a component part. Indeed, even Farkas' own expert testified at his deposition that he does not "know of anything – that [Overton] have caused any—any problems with this particular machine" and further testified that he does not "have any issues with the design or manufacture of the clamp [blocks]." (ECF No. 79 at 11).

As previously discussed, Missouri law does not impose liability on Overton as a non-defective component part manufacturer when the end product was designed, assembled and sold

by other entities. *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 598 (8th Cir. 1993) ("Sperry cannot recover under either of his design defect theories because there is no evidence that Bauermeister supplied or designed a defective product."); *Sperry v. Bauermeister, Inc.*, 786 F. Supp. 1512, 1518 (E.D. Mo. 1992) ("Micron can not be held liable for the incorporation of its non-defective component part into a milling system defectively designed"); *Hunt v. Guarantee Elec. Co. of St. Louis*, 667 S.W.2d 9, 12 (Mo. Ct. App. 1984) ("Absent proof defendant designed, assembled, and sold the system to Purex in the course of its business, plaintiffs' proof goes only to showing defendant installed an automatic timer pursuant to its contract to provide the services of electricians."). Overton cannot be held liable for the purportedly unsafe condition of the Machine when Overton was only hired to manufacture the clamping blocks and was not retained to evaluate the safety of the Machine or incorporate any safety devices into the Machine. Therefore, the Court grants Overton's Motion for Summary Judgment as a matter of law.

### D. Addition Manufacturing Technologies' Motion for Summary Judgment

Farkas alleges his pointer and middle fingers on his left hand were crushed when, while operating the ram spin component, he stuck his hand into the right side of the Machine manufactured by Addition. Addition claims the point of operation guard on the Machine was defective because it allowed Plaintiff to place his fingers into the Machine. (ECF No. 88 at 3). The Machine was manufactured with a point of operation guard that consisted of a hinged door and Lexan material that was slightly larger than the product it was designed to accept in its clamping jaws, which kept the operator's fingers from entering the Machine.

Farkas argues Addition's design of the Machine caused his injuries. Farkas claims the design of the Machine requires an operator's hands to be mere inches from the "danger zone," allowing injury to an operator's hands. (ECF No. 95 at 3). Farkas maintains the Machine was

- 14 -

defective and unreasonably dangerous because it had a foot pedal instead of two-hand control and it lacked a light curtain. (ECF No. 95 at 5). "Two-hand control, an alternative to a foot pedal, is a safety device that requires the operator to have both of his hands safely away from the danger zone before the machine will operate." (ECF No. 95 at 3). "A light curtain is a safety device that prevents activation of the machine while an operator's extremities are near or underneath clamping mechanisms." (ECF No. 95 at 3-4). Farkas claims that Addition has made a "straw man" argument by claiming the point of operation guarding was not defective at the time of sale. Farkas asserts the Machine was unreasonably dangerous at the time it was placed into the stream of commerce because it lacked two-hand control and a light shield, regardless of the point of operation guarding. In fact, after the sale of the Machine, Addition stopped selling the Machine with a foot pedal and no light curtain to "prevent unintentional contact with [the] device." (ECF No. 95 at 7).

In turn, Addition argues the alteration to the point of operation guard by third parties was the negligent act that made the Machine unsafe. Addition asserts the point of operation guard was altered so that it did not prevent Farkas' hand and fingers from entering the Machine. Addition points to Farkas' expert Dr. Blundell's testimony that a machine with a foot pedal is not inherently dangerous and is safe where the point of operation area is guarded. (ECF No. 102 at 3-4).

The Court grants summary judgment in favor of Addition. Both sides agree that the Machine utilized a foot pedal instead of two-hand control and it lacked a light curtain. Both sides also seem to agree—or at least do not dispute—that two-hand control and a light curtain would have prevented Farkas' accident. Both sides also agree that third parties (not Addition)

altered the point of operation guard after it entered the stream of commerce.[4] The only point of contention is whether the point of operation guard at the time that the Machine entered the stream of commerce would have protected against the injury incurred by Farkas; that is, whether the point of operation guard on the Machine at the time it was sold was safe. Addition maintains that "[t]he subject machine was safe until Bohn & Dawson altered the point of operation guarding". (ECF No. 102 at 6). Farkas has failed to provide any evidence to controvert this proposition. *See Patterson v. Foster Forbes Glass Co.*, 674 S.W.2d 599, 603 (Mo. Ct. App. 1984) (it is the "plaintiff's burden to establish that the defect causing the injury existed at the time the product left the possession and control of the defendant"); *Brissette v. Milner Chevrolet Co.*, 479 S.W.2d 176, 181 (Mo. App. 1972) (plaintiff must prove the defect). In contrast, Addition has provided evidence that the Machine was manufactured with a point of operation guard that consisted of a hinged door and Lexan material that was slightly larger than the product it was designed to accept in its clamping jaws, which kept the operator's fingers from entering the Machine. Addition claims Farkas has no evidence the Machine was in a defective condition when it was originally sold. Farkas' expert, Dr. Blundell, testified he did not know what point of operation guard or what components were on the subject machine when it was manufactured and sold in 1992.

Further, based upon expert testimony and industry standards, the Court must grant summary judgment in favor of Addition as a matter of law. Farkas has not demonstrated that the Machine was unreasonably safe for its intended use at the time it was manufactured by Addition. Farkas can point to nothing in the industry standard to demonstrate that two-hand controls and

---

[4] Addition provided evidence that the entry guard on the Machine was altered. Bohn & Dawson employee Matt Lamping confirmed that the point of entry guard on the Machine was fabricated by Bohn & Dawson. Addition asserts that the defective operation guard was installed on the machine by third parties more than twenty (20) years after its manufacture.

light curtains are the only protections that would have made the Machine safe. In fact, even Farkas' expert, Dr. Blundell admitted that a machine with a foot pedal and a properly-working point of entry guard is not inherently dangerous. *See* ECF No. 102 at 2-3. Moreover, the American National Standards Institute states that "[i]t shall be the responsibility of the modifier or reconstructor to ensure that any modification or reconstruction of the safeguarding be done in accordance with this standard." (ECF No. 89-13). Farkas argues Addition could have "designed out the danger of an operator's hands being caught in the clamping jaws by requiring it to have a light curtain." (ECF No. 95 at 11). Farkas, however, has not shown that point of entry guard in existence at the time of the Machine's manufacture failed to make the Machine safe. Addition provided photographs of the Machine from 1992, showing that it had a hinged safety door on the right side. (ECF No. 102 at 4). Dr. Blundell has only testified that the point of operation guard on the Machine at the time of Farkas' accident was defective. Therefore, Farkas has failed to carry his burden of proof as a matter of law and this Court must grant summary judgment in Addition's favor. *See Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 375 (Mo.1986) (en banc) ("[T]he primary inquiry in a design defect case is whether the product—because of the way it is designed—creates an unreasonable risk of danger to the consumer or user when put to normal use.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(B) Expert Disclosure and Motion to Exclude Plaintiff's Rule 26(a)(2)(B) Expert (ECF No. 53) and Defendant Addition Manufacturing

Technologies, LLC's Motion to Exclude Plaintiff's Rule 26(a)(2)(B) Expert Dr. J. Kenneth Blundell (ECF No. 85) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Addition Manufacturing Technologies, LLC's Motion to Strike Plaintiff's Rule 26(a)(2)(C) Expert Disclosures and Motion to Exclude Plaintiff's Rule 26(a)(2)(C) Experts (ECF No. 57) is **DENIED**, in part, and **GRANTED**, in part, as set forth above.

**IT IS FINALLY ORDERED** that Defendant Overton Industries, Inc.'s Motion for Summary Judgment (ECF No. 63) and Defendant Addition Manufacturing Technologies, LLC's Motion for Summary Judgment (ECF No. 87) are **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 7th day of December, 2018.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**